No. 19,367.

SIMON SIEROTA *v.* ED S. SCOTT, MAYOR, ETC., ET AL.

(352 P. [2d] 671)

Decided May 31, 1960.

Mr. JOHN D. SAVIERS, Mr. LOUIS F. PELL, for plaintiff in error.

Mr. JOSEPH W. ESCH, Mr. RICHARD N. GRAHAM, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

WE might label this an exercise in semantics as will more fully hereinafter appear.

Sierota had a license from the State of Colorado, issued under C.R.S. '53, 75-1-1, et seq., to sell fermented malt beverages. When it first issued, his place of business was in Arapahoe County outside of the city limits of defendant City of Englewood. Subsequently the area involved was annexed to the city and still later the city council adopted a licensing ordinance (No. 4, Series 1959) which required Sierota, when his previous license expired, to elect whether he would sell fermented malt beverages by the drink or in packages. Faced with the threat of no license at all for his established business Sierota accepted, under duress, a city license restricting him to package sales only. He attacked the ordinance by suit and is here upon supersedeas seeking reversal of a district court decision which upheld the city. He asserts that the city lacks authority to prohibit by ordinance what a state statute permits. In other words, the question is:

MAY CITY ORDINANCE SUPERSEDE THE STATE LICENSING STATUTE WHICH PERMITS SIEROTA TO SELL FERMENTED MALT BEVERAGES BY BOTH THE DRINK AND IN PACKAGES?

This question is answered in the negative.

The pertinent statutory sections appear in C.R.S. '53, 75-1 and read:

"Lawful to manufacture and sell. — It shall be lawful to manufacture and sell fermented malt beverages containing not more than three and two-tenths per cent alcohol by weight, subject to the provisions of this article.

" * * *.

"75-1-6. * * *.

"(3) A retailer's license shall be granted and issued to any person, * * * qualifying under section 75-1-5 to sell at retail the said fermented malt beverages as defined in this article, upon paying an annual license fee

of twenty-five dollars to the department of revenue, and an annual license fee of twenty-five dollars to the licensing authorities of the town, city, or city and county. * * *

"75-1-7. * * *.

"No licenses, in addition to the licenses provided for in this article, shall be required by any city, town, county, or city and county, for the right * * * to sell at wholesale and at retail the fermented malt beverage defined in this article.

" * * *

"No licenses shall be refused arbitrarily or without good cause, * * *.

"No local licenses shall be granted to any person until he has first obtained a state license as herein provided.

"The licensing authorities having the power to issue licenses under this article shall likewise have the power to make such reasonable rules and regulations with respect to the sale of fermented malt beverages as they may deem proper, not inconsistent with the provisions of this article."

The applicable parts of Ordinance No. 4, Series 1959, provide:

"Section 3. It shall be unlawful for any person to sell fermented malt beverages under one license or at the same location by both the package and the drink; provided, however, that this prohibition shall not affect the rights of any persons now holding a lawful and valid license for the sale of fermented malt beverages.

"Section 4. All applications for the sale of fermented malt beverages hereafter filed with the licensing authority of the City of Englewood shall specify whether or not the sale of said beverages shall be by the package or the drink and shall specifically state which use is intended in the posting of the premises or advertising of notice of said application.

"Section 5. All licensing hereinafter issued by the licensing authority of the City of Englewood for the sale

of fermented malt beverages shall be issued specifically for the sale of such beverages by the package or by the drink, but not for both purposes."

Though C.R.S. '53, 75-1-1, et seq., does permit municipalities "to make * * * reasonable *rules and regulations*" for 3.2 beer sales, this is a far cry from any delegation of power to *prohibit* sales as is done here, if they chose to issue a license in the first place. Forbidding one or the other type of sale is precisely what this ordinance does and is intended to do. That is also precisely what it cannot do under the guise of regulation. See *Solomon v. Denver* (1898), 12 Colo. App. 179, 55 Pac. 199; *Glendinning v. Denver* (1911), 50 Colo. 240, 114 Pac. 652; *Ray v. Denver* (1942), 109 Colo. 74, 121 P. (2d) 886; *Lynch v. Tilden Produce Co.* (1924), 265 U.S. 315, 68 L. Ed. 1034.

Only recently this court had occasion to hold an attempt of a city to limit the number of liquor licenses by an ordinance restricting the issuance thereof upon the basis of population rather than upon the needs of the neighborhood and desires of its residents, to be contrary to the state statute. *The City of Colorado Springs v. Graham,* No. 18,608 (decided May 16, 1960). In *Buddy and Lloyd's Store No. 1, Inc. v. City Council* (1959), 139 Colo. 152, 337 P. (2d) 389, in reversing a judgment against an applicant this court said in pertinent part:

"The wide discretion which we have repeatedly held is vested in the licensing authority in granting or denying licenses is not to be construed as authority to establish a local public policy either by express resolution or by secret agreement contrary to the state statutes which have legalized the issuance of this particular type of license."

And, *Canon City v. Merris* (1958), 137 Colo. 169, 323 P. (2d) 614, held that where the state has adopted a statute on a matter of statewide interest or concern (and licensing liquor, wine or beer sales is such a matter) then the local governmental units are deprived of juris-

diction over such subjects. We add that this is not so however where the state statute has delegated power such as it has here to cities also to join in regulation. As pointed out above though the express power here granted the city by state statute does not permit or condone *complete prohibition* of a right granted by statute. Thus the city has improperly attempted to require two licenses where only one is required by the state law.

The city urges that under the authority of *Gettman v. Bd of City Commissioners* (1950), 122 Colo. 185, 221 P. (2d) 363, and *Houpt v. Town of Milliken* (1953), 128 Colo. 147, 260 P. (2d) 735, this court has upheld regulations similar to the one here challenged. We consider those cases as not in point. They merely upheld what were then deemed to be reasonable regulations as to hours of sale and did not deal with the issue here presented.

In view of our conclusion, other grounds urged for reversal need not be considered.

The judgment is reversed with directions to the trial court to order the defendant city to issue Sierota his license in conformity with the state statute.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.