Paula Herzmark Executive Director Colorado Department of Local Affairs 1313 Sherman Street, Room 518 Denver, Colorado 80203
Dear Ms. Herzmark:
This opinion is in response to your July 21, 1980 letter, in which you inquired about the authority of a special district, having water and/or sanitation functions, to demand prepayment of tap fees to comply with United States Farmers Home Administration (FmHA) regulations for making loans to municipalities.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents one question:
Does a special district, having water and/or sanitation functions, have authority to demand prepayment of tap fees in order to comply with Farmers Home Administration regulations for making loans to municipalities?
 My conclusion is "no." The Colorado statutes authorizing the collection of tap fees presuppose the construction and operation of water and/or sewage facilities.
ANALYSIS
A special district seeking funding from the United States Farmers Home Administration (FmHA) must satisfy that agency's regulation requiring the collection of "potential user cash contributions." The pertinent regulation states:
 In order to establish realistic user estimates, the following are required:
 (A) Meaningful potential user cash contribution. Contributions shall be high enough to indicate sincere interest on the part of the potential user but not so high as to preclude service to low-income families. Contributions ordinarily shall be in an amount approximating one-year's minimum use fees and shall be paid in full before loan closing or the commencement of construction, whichever occurs first. User cash contributions are required except for users presently receiving service or in those cases where FmHA determines that users cannot make a cash contribution.
7 C.F.R. 1942.17(h)(2)(ii)(A).
Water districts and water and sanitation districts possess the powers of special districts specified in C.R.S. 1973, 32-4-101
through -140, as amended and 32-3-101 through -133, as amended. In addition, the definition of "municipality" in C.R.S. 1973,31-35-401(4) encompasses water and sanitation districts; therefore, these special districts possess the powers articulated in C.R.S. 1973, 31-35-402. See, Perl-Mack v. Boardof Directors, 140 Colo. 371, 344 P.2d 685 (1959).
C.R.S. 1973, 32-3-101 et seq. and 32-4-101 etseq. do not authorize the collection of the potential user cash contributions required by FmHA. The powers articulated in C.R.S. 1973, 32-4-113 permit the collection of charges for services or facilities which are available to district customers. "Availability of service or facilities" is, however, specifically defined in C.R.S. 1973, 32-4-113(1)(l)(IV) as those water and/or sewer lines which:
 are installed and ready for connection, within one hundred feet of any property line of the residential lot or residential lot equivalent to be assessed, but to one or both of which line or lines the particular lot or lot equivalent to be assessed is not connected.
It does not appear from the facts stated in your request or the documents attached thereto that the service lines would approach within one hundred feet of the customer's lots. Rather, it appears that no construction will be commenced prior to the payment of these potential user cash contributions. That being the case, the collection of these fees cannot be justified under C.R.S. 1973, 32-4-113. Further, there are no similar statutory references in C.R.S. 1973, 32-3-114 and 32-3-115 which provide any basis for such fees.
C.R.S. 1973, 31-35-402 permits a municipality or quasi-municipal corporation to accept loans and/or grants from the United States to aid in financing action preliminary to construction, C.R.S. 1973, 31-35-402(1)(c), or to finance construction of water and/or sewerage facilities, C.R.S. 1973, 31-35-402(1)(d). In addition, C.R.S. 1973, 31-35-402(1)(f) authorizes a municipality:
 To prescribe, revise, and collect in advance or otherwise, from any consumer or any owner or occupant of any real property connected therewith or receiving service therefrom, rates, fees, tolls, and charges or any combination thereof for the services furnished by, or the direct or indirect connection with, or the use of, or any commodity from such water facilities or sewerage facilities or both, including, without limiting the generality of the foregoing, minimum charges, charges for the availability of service, tap fees, disconnection fees, reconnection fees, and reasonable penalties for any delinquencies. . . .
While the words "collect in advance," contained in C.R.S. 1973,31-35-402(1)(f), may suggest that the fee could be collected prior to the construction of the facilities, I am satisfied that this statutory provision does not authorize such a result. The Colorado Supreme Court interpreted the earlier version of the above-quoted provision and concluded that the statute presupposed constructed facilities.
In Aurora v. Bogue, 176 Colo. 198, 49 P.2d 1295 (1971), the City of Aurora demanded payment of a storm drainage fee as a condition to issuance of building permits. The city based its position that such a fee was sanctioned on the municipality's power pursuant to C.R.S. 1953, 139-52-1 etseq.
 (T)o prescribe, revise and collect rates, fees, tolls or charges for services furnished by such sewage facilities, and in anticipation of a collection of revenues of such sewage facilities to issue revenue bonds to finance in whole or in part the cost or acquisition, construction, reconstruction, improvement, betterment or extension of sewage facilities. . . .
The Colorado Supreme Court interpreted this provision:
 It is clear from the language of the statute that the power to impose fees under this authority presupposes the construction and operation of a sewage facility, as the fees are for `services furnished.' In this case, admittedly no storm sewer facilities had been constructed or even commenced from the date of the enactment of the ordinance in March of 1959 until the date of trial in September, 1967, a period of eight years. Obviously, no services were furnished
for which a `rate, fee, toll or charge' could be validly imposed.
176 Colo. at 201.
The Bogue case interpreted the statute setting forth a municipality's powers prior to the 1962 amendment which specified that the fees could be collected "in advance." The addition of this language to the statute — that the fees can be collected "in advance or otherwise" — does not change the basic holding of the Bogue case. Bogue
requires that the services be available prior to the collection of fees in the absence of a clear legislative expression to the contrary. I interpret that language only as a clarification that fees may be collected before the services are furnished, but not before the facility is capable of furnishing the actual services.
Subsections (c) and (d) of C.R.S. 1973, 31-35-402(1) permit a municipality to accept grants and loans from the federal government; those subsections authorize acceptance of the loan only and do not specifically permit a municipality to do everything necessary to qualify for the loan. The authority to take those steps necessary for qualification, including the collection of potential user cash contributions, must be sanctioned by some other provision of the Colorado statutes. Since I can find no such authority, I conclude that the special districts cannot collect these fees.
SUMMARY
To briefly summarize my opinion, a special district, having water and/or sanitation functions does not have authority to demand prepayment of tap fees in order to comply with FmHA regulations for making loans to municipalities because the statutory provisions authorizing collection of tap fees contemplate existing water and/or sewage facilities.
Very truly yours,
 J.D. MacFARLANE Attorney General
FEES SPECIAL DISTRICTS MUNICIPAL GOVERNMENT
C.R.S. 1973, 31-35-401
C.R.S. 1973, 31-35-402
C.R.S. 1973, 32-3-101 through -133 C.R.S. 1973, 32-4-101 through -140
LOCAL AFFAIRS, DEPT. OF Local Government, Div. of
A special district having water and/or sanitation functions does not have authority to demand prepayment of tap fees in order to comply with FmHA regulations for making loans to municipalities because the statutory provisions authorizing collection of tap fees contemplate existing water and/or sewage facilities.